## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In re:<br><br>MARK JOSEPH KORIS,<br><br>Debtor. | Chapter 7<br><br>Case No. 18-12759 (MSH) |

### SETTLEMENT AGREEMENT BETWEEN TRUSTEE AND WELLS FARGO HOME MORTGAGE RE SALE MOTION AND SALE RELATED CHARGES

John O. Desmond, Chapter 7 Trustee (the "**Trustee**") of Mark Joseph Koris (the "**Debtor**") and Wells Fargo Home Mortgage (the "**Bank**") hereby agree as follows:

### BACKGROUND

1. On July 19, 2018, Mark Joseph Koris, (the "**Debtor**") filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code and thereafter John O. Desmond was appointed and became the Trustee (the "**Trustee**").

2. Based on the Debtor's Schedules and on recorded documents at the Norfolk County Registry of Deeds, the Trustee determined that the Estate has an interest in the property located at 11 Heath Hill Road, Brookline, Massachusetts (the "**Real Property**").

3. The Trustee has visited and inspected the Real Property, observing that the Real Property is in a deteriorating condition, including damage relating to an unrepaired ceiling, a hole in the basement and other unsafe conditions in need of critical repairs. The Real Property has not been maintained in over a decade for lack of funds; and with winter approaching there is great concern that the Real Property will be in graver danger given the lack of funds of the Debtor, his spouse and the Estate, including for heat.

4. The eroding and deteriorating conditions of the Real Property stem from a precipitous, drastic and unexpected loss of the family's income due to a severely debilitating, life- threatening stroke suffered by the Debtor which left the Debtor permanently disabled and in need of care by his spouse, and co-owner, Francine Koris ("**Francine**"). At that time and through July of 2018, the family income was reduced to disability payments of $16,000 a month.

5. Then in August 2018, as the Debtor reached the age of 65, his disability payments terminated and the Debtor's income -- the only income the family receives -- is now solely from social security payments of less than $3,500 a month, woefully insufficient to pay obligations other than non-discretionary life necessities.

6. Realizing that the Real Property needed to be sold forthwith due to its unsustainable condition the Trustee filed an application to employ a broker (the "Broker) for the sale of the Real Property. Similarly, Francine had retained a broker, but without any offer having been received.

7. Wells Fargo Home Mortgage ("**the Bank**") asserts that it is the senior secured creditor in this case holding a mortgage pursuant to assignments from World Savings Bank to Wachovia Bank then to the Bank of a mortgage in the principal amount of $1,280,000 dated October 17, 2007.

8. The Bank asserts that it is now owed a present principal balance of $1,359,385.02 (the "**Senior Secured Claim**"), plus accrued interest of $400,700.98 through December 12, 2018, and taxes of $157,859.58.

9. The Bank asserts that it is the senior secured lender/mortgage holder on the Real property. However, the Trustee's review of the Title at the Norfolk Registry of Deeds reflects

2

that GE Capital Mortgage Services, American General Finance, Inc., and Fleet National Bank each hold mortgages of record on the Real Property ahead of World Savings Bank. The Bank asserts and represents that the mortgages of GE Capital Mortgage Services, American General Finance, Inc., and Fleet National Bank (collectively, the "Presumed Discharged Mortgages) were either discharged or should have been discharged pursuant to the 2007 mortgage granted by the Debtor and Francine to World Bank (now by virtue of assignments, the Bank). The Bank further confirms that it has reviewed the certificate of service to the Sale Motion and that the each of the Presumed Discharged Mortgages were noted as having been served at the addresses on the Presumed Discharged Mortgages. Further, after review of the docket both the Trustee and the Bank concur that no objection was filed by any of the Presumed Discharged Mortgages by the Objection Deadline. Accordingly, in an abundance of caution the Bank, in order to best ensure a title policy will issue for any seller, will file a proof of claim as the holder of the senior mortgage in the amount of the Allowed Bank Claim (defined below) and attach this Agreement as to the representations as to the effective discharges of the Presumed Discharged Mortgages, and which Agreement and Proof of Claim to be filed by the Bank will also be incorporated into the Sale Order.

10. The Debtor and/or Francine had earlier attempted to negotiate, albeit unsuccessfully, for a short sale with the Bank.

11. On November 20, 2018 the Trustee filed the Sale Motion (Docket #54) (the "**Sale Motion**") seeking to sell the Real Property pursuant to sections 363(b), (f) and (h) of the Code. As noted in the Sale Motion, the Trustee had reached an agreement with Francine obtaining her consent to the Sale and the Sale Motion under section 363(h).

12. Pursuant to the Sale Motion it was anticipated that any distribution from the Net

3

Sale Proceeds (as defined in the Sale Motion) would benefit the Bank (therein defined as the presumptive holder of the senior secured claim) and to the benefit of its presumptive Senior Secured Claim (as defined therein) or otherwise be as set forth in the Sale Motion after determination of the validity, amount and enforceability of the mortgages, liens and encumbrances.

13. The Trustee asserted in the Sale Motion that the proposed section 363 sale as contemplated therein is in the best interest of the Estate as it will enable the Trustee to obtain the highest and best offers for the Real Property and augment the value of such asset for the Estate and Senior Secured Claim holder. The Trustee further asserted that the alternative of abandonment or if any mortgage holder were to seek stay relief and foreclosure would be economically disastrous.

14. The Bank asserts that it is the senior mortgage holder on the Real property but has not moved for relief from the automatic stay.

15. On or about December 11, 2018, the Bank requested and received from the Trustee a broker opinion of value, which stated that the Real Property based on comps and its apparent tear-down condition if viewed without access would be valued at approximately 1.3 million. However, pursuant to the pending section 363 sale (and by obtaining Francine's consent – including her consent, along with the Debtor and her mother, to vacate the Real Property), the broker believes that the home can be renovated and should be valued as a renovation instead of a tear-down and that such value – which only can be generated through the pending section 363 sale— may sell as high as 1.6 to 1.7 million dollars. Accordingly, by the Broker enabling prospective bidders a thorough home inspection and in-home assessment by professional architects and contractors, there is the means by which bidders can assess the

structural integrity of the Real Property.

16. The Trustee avers and the Bank acknowledges that the section 363 sale methodology has proven to be the best test of fair market value, meaning that the Bank as the asserted holder of the Senior Secured Claim believes the ultimate price for the Real Estate from the section 363 Sale will be the optimum fair market value, and that stay relief and foreclosure will take immeasurable time to consummate; and by then the Real Property, according to not only the Trustee's Broker, but also other brokers, will have -- at best -- deteriorated beyond repair.

17. Moreover, if the Debtor, Francine and Francine's 92 year-old mother still reside at the Real Property with nowhere else to go, eviction will not only be problematic, but any foreclosure sale price will be dramatically chilled, and the expenses and likely innumerable delays associated with eviction increasingly expensive while the extent of winter damage given the family's dramatic loss of income taking a meaningful toll. Finally, given the overwhelming amounts of personal property and debris at the Real Property, being addressed and remediated by the Trustee would be sufficient to warrant satisfaction of section 363 (f), especially given that no objection is likely to be received by the actual mortgage holders presently ahead of the Bank that still remain on record with the Norfolk County Registry of Deeds.

18. Francine (and the occupants) have agreed and will vacate the Real Property prior to the sale closing pursuant to a Stipulation with Francine negotiated by the Trustee and filed on November 30, 2018, thereby providing a significant and meaningful economic benefit consequential to the enhancement of the Sale Price (the "Francine Agreement").

19. Pursuant to this Sale Motion, the Trustee requested authority to pay from the sale proceeds certain fees and expenses related to the sale which were itemized in <u>Exhibit C</u> to the

Sale Motion and defined therein as **Sale Related Charges**. Exhibit C to the Sale Motion provided the analysis as to sources and uses of the Sale Related Charges formula as itemized, the Trustee proposed based on the $1,500,000.00 initial offer, subject to adjustments that have to be made after the final sale price is established, in light of there now being multiple counteroffers and the inevitability of a sealed bids.

20. Such Sale Related Charges included but were not limited to (a) professional fees and expenses; (b) the Trustee's commission on the sale price as provided under 11 U.S.C. § 326; (c) the Broker's commission of five (5%) percent; (d) payment of reasonable packing, moving and/or storage costs in furtherance of the consensual departure by the Debtor and Francine (and other occupant(s)); (e) accrued and unpaid real estate taxes and municipal water and other liens for the Real Property; (f) any other taxes including potential capital gain taxes; and (g) closing costs including ordinary and customary settlement fees, recording stamps, taxes and charges. The professional fees and expenses to be paid as Sale Related Charges are in connection with the efforts of the Trustee's counsel to pursue and facilitate the sale process, including commencing negotiations with counsel to Francine to facilitate the sale; discussions with the Broker and other parties on bankruptcy procedure and sale protocol; negotiations with the Buyer's counsel and counteroffer(s)' counsel; drafting the Purchase Agreement and other purchase and sale agreements, necessary title work, negotiations with title insurance counsel for bidders; drafting sale pleadings; tax mitigation research and analyses; drafting several settlement documents and pleadings, and attending the court hearing related to the Sale.

21. Further incorporated into the Sale Related Charges, the Trustee further requested that, any increase from the Offer through the 363(b) sale counteroffer and sealed bid process would be increased proportionately thereby fully justifying the Sale as in the best interests of the

Estate and its Creditors (the "**Estate Benefit**").

22. The Bank has requested and the Trustee, Trustee's counsel and accountant will provide to the Bank statements of respective services, charges and estimates of the fees ("**Statements**") which will collectively be filed on Monday, December 17, 2018, as Exhibit A to this Agreement in order to justify the fees and anticipated fees and expenses incurred regarding the entirety of the Sale process, and necessary for tax mitigation purposes.

23. The Sale Motion further states that the proceeds of the sale for the Real Property less the Sale Related Charges (the "**Net Sale Proceeds**") shall either be paid to the Bank by agreement or, in the event of any dispute or objection, shall be held in the Trustee's account until disposition of any such dispute or objection after payment of the Sale Related Charges.

24. In light of the within settlement, if approved, the Trustee requests to make such payment of the Net Sale Proceeds at closing in full and final satisfaction of the Bank's Allowed Claim, defined below, pursuant to the within agreement between the Bank and the Trustee at the Sale closing on or before December 28, 2018 together with the Sale Related Costs as amended by the formula set forth in this agreement.

25. The Sale Related Charges were based upon the offer purchase price of $1,500,000.00 (the "**Purchase Price**") however the Trustee has received multiple counteroffers with no other contingencies except as to as all occupants vacating the Real Property along with their personal property as is specifically set forth and provided in the Francine Agreement.

26. The Bank and Trustee have engaged in a series of negotiations in furtherance of the Sale and the resolution as to the Sale Related Costs.

NOW, THEREFORE, the Trustee and the Bank stipulate and agree as follows:

1. The Bank consents to the Trustee selling the Real Property free and clear of the

Bank's mortgage, pursuant to 11 U.S.C. § 363(f) (the "**Sale**").

2. The Trustee agrees that the Sale Related Charges shall be revised as follows subject to amounts estimated to be adjusted to the ultimate sealed bid price as such amounts are dependent upon the Sale Price and closing (the Amended Sale Related Charges).

3. Real estate taxes, recording charges, water/sewer, certified copies, (seller closing expenses): $10,000.00 (estimate).

4. Trustee Commission under Section 326 of the Bankruptcy Code: $70,200.00 (estimate)

5. Expenses for Clean up of the Property and Removal of all junk and remaining personal property from the premises: $6,500.00.

6. Brokers' commission: $75,000.00 (estimate)

7. Trustee's counsel: $100,000.00 (estimate) and expenses $3,000

8. Updated re-wiring of smoke and CO detectors: $2,500.00.[1]

9. Accountants: $5,000.00.

10. Reimbursement and payment of Expenses of sale related to moving/relocation/closing and fees and cost reimbursements of Francine (actual expenses): $25,000.00. (This amount is based on estimates from various contractors).

11. Estate carve out $45,000.00.

12. The Amended Sale Related Charges will be paid at closing, with the Bank acknowledging such funds are necessary to fully mitigate the Estate's tax obligation. If the Sale Related Charges paid at the Closing exceed the actual Cumulative total of the actual Sale Related Charges incurred, then any difference will be returned to the Bank.

---

[2] This amount was not in the Sale Motion Exhibit and is intended to be charged to the successful bidder; however in an abundance of caution due to the Broker suspecting this as a potential issue it needs immediate reparation.

8

13. **For tax mitigation purposes** which if not paid would substantially jeopardize the bids and Sale from occurring and its benefits to the Bank, Francine and the Estate, the Bank agrees that the fees and expenses can be paid immediately from the Sale Related Costs as section 506(c) but shall not be deemed a final order and reserves all rights to object to such fees at the final hearing and share in distribution of any disallowance/disgorgement.

14. The Bank will be paid at closing after deduction of the Amended Sale Related Charges as set forth above (as may be further adjusted by the applicable percentage increases as the highest counteroffer) as necessary to fully mitigate the Estate's and Francine's tax obligation.

15. The Bank and Trustee will also equally divide 50% of the net increase if the ultimate purchase price (i.e., gross purchase price) at closing exceeds the sum of $1,580,000.00 after adjustment for the above estimates (the "Incentive Carve Out").

16. The Bank will be allowed a secured claim in the amount paid at closing plus the Amended Sale Related Charges and the Incentive Carve Out, if applicable (the "**Bank's Allowed Claim**"). The proceeds received by the Bank shall be applied to the Loan.

17. The Bank, upon consummation the Sale of the Real Property, pursuant to § 363 plus payment of the Bank's Allowed Claim, and payment of the Amended Sale Related Charges, and the Incentive Carve Out, if any, the Bank will waive any and all claims against the Estate and Francine.

18. The Bank will cooperate with the Trustee and shall take all reasonable steps necessary to ensure the Trustee that the Bank is the senior secured mortgage holder on the Real Property.[2]

19. The Bank further agrees that the Trustee may pay from the deposit of any

---

[2] Page 1 of the World Bank Mortgage notes that it was closed by an existing law firm in Brookline which the Bank will demand sufficient or provide sufficient evidence to evidence the senior mortgages of record were paid and discharged (but not recorded), or otherwise provide information that it is the Senior Mortgage holder).

consenting bidder, to pay up to the actual expenses specified above above for packing, moving and related charges necessary for the Debtor, Francine and her mother to vacate and remove their belongings prior to closing and to remove trash at the Real Property and that if the deposit is not that of the successful bidder then such deposit shall be immediately repaid from either the deposit of the successful bidder. This is for convenience purposes, and to ensure the deposit is refunded to any such non-successful bidder but does not add to the Amended Sale Related Costs.

20. The Bank agrees to cause to have executed all documents and undertake all reasonable steps necessary before the closing to timely effectuate the Sale of the Real Property by the Trustee including, if necessary, causing to have all senior mortgages discharged or such other requirements that the successful buyer's title company may have.

21. The Trustee shall benefit from all deductions and credits for which the Debtor and Francine may otherwise be entitled from the payment to the Bank including as to application of $10,000.00 in real estate taxes and the interest payments to the Bank as may be allocated by the Trustee.

22. This Agreement is only operative if the Trustee is granted court approval of the Sale Motion as amended by this agreement, the Francine Settlement and consummates the Sale.

So Agreed,

/s/ John O. Desmond
John O. Desmond, Chapter 7
Trustee of Mark Joseph Koris

By his attorney,

/s/ Alan L. Braunstein
Alan L. Braunstein, Esq. (BBO #546042)
RIEMER & BRAUNSTEIN LLP
One Center Plaza
Boston, MA 02108
(617) 880-3516
abraunstein@riemerlaw.com

/s/ Tatyana P. Tabachnik
Tatyana P. Tabachnik, Esq. 673236
Orlans PC
Attorneys for Wells Fargo Bank, N.A.
P.O. Box 540540
Waltham, MA 02454
(781) 790-7800
bankruptcyNE@orlans.com

2420664.1

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

In re:

MARK JOSEPH KORIS,

Debtor.

Chapter 7
Case No. 18-12759 (MSH)

## CERTIFICATE OF SERVICE

I, Alan L, Braunstein, with the law firm of Riemer & Braunstein LLP hereby certify that I caused a copy to be served on December 14, 2018 a true and accurate copy of the ***Settlement Agreement Between Trustee and Wells Fargo Home Mortgage re Sale Motion and Sale Related Charges*** by first class United States mail, postage pre-paid, or by electronic notification (EN) where indicated, to the individuals listed below and the attached MATRIX:

Office of the United States Trustee
Attention: Heather Sprague, Esquire
J.W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109
USTPRegion01.BO.ECF@USDOJ.GOV; Heather.Sprague@usdoj.gov  (EN)

John O. Desmond
5 Edgell Road, Suite 30A
Framingham, Massachusetts 01701
trustee@jdesmond.com; jdesmond@ecf.epiqsystems.com (EN)

Todd S. Dion, Esquire
15 Cottage Ave, Suite 202
Quincy, MA 02169
toddsdion@msn.com (EN)

Mark Joseph Koris
11 Heath Hill Street
Brookline, MA 02445

Tatyana P. Tabachnik
Orlans PC
P.O. Box 540540
Waltham, MA 02454
bankruptcyNE@orlans.com, ttabachnik@orlans.com;
ANHSOM@4stechnologies.com (EN)

Anthony Buono, Esq.
Black and Buono, P.C.
600 Worcester Road, Suite 403
Framingham, MA 01702
Anthony@blackandbuono.com (EN)

David B. Madoff
Madoff & Khoury LLP
124 Washington Street - Suite 202
Foxborough, MA 02035
madoff@mandkllp.com, alston@mandkllp.com (EN)

Massachusetts Department of Revenue
Bankruptcy Unit
P.O. Box 9564
Boston, MA 02114

Internal Revenue Service
Special Procedures Function STOP 20800
P.O. Box 9112
JFK Building
Boston, MA 02203

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101

                              /s/ Alan L. Braunstein
                              Alan L. Braunstein (BBO #546042)
                              Riemer & Braunstein LLP
                              One Center Plaza
                              Boston, Massachusetts 02108
                              (617) 523-9000
                              abraunstein@riemerlaw.com

2420673.1

2

Mark Koris
Chapter 7, Case No. 18-12759
Matrix

Cavalry Portfolio Services, LLC
500 Summit Lake Drive, Suite 400
Valhalla, NY 10595

Wells Fargo Home Mortgage
P.O. Box 10335
Des Moines, IA 50306

Boston Gas Corporation
dba National Grid
52 Second Avenue
Waltham, MA 02451

P. Schneider & Associates PLLC
80 Birch Hill Drive
Cairo, NY 12413

Alicia M. Abu
Andrew Abu Realtors
6 Church Street
Northborough, MA 01532

Verdolino & Lowey PC
124 Washington Street
Foxboro, MA 02035

National Grid
300 Erie Blvd West
Syracuse, NY 13202

Stanley L. Plecha, Jr.
2425 Northshore Drive
Reno, NV 89519

Verizon by American InfoSource as agent
4515 N. Santa Fe Ave
Oklahoma City, OK 73118